IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

ICORE NETWORKS, INC.,          )
                               )
     Plaintiff,                )
                               )
          v.                   )    1:12cv535 (JCC/JFA)
                               )
ALLIANCE, INC.,                )
                               )
     Defendant.                )

**M E M O R A N D U M   O P I N I O N**

     This matter is before the Court on Defendant Alliance,
Inc.'s Motion for Summary Judgment (the Motion).  [Dkt. 12.]
For the following reasons, the Court will deny Defendant's
Motion.

**I.    Background**

     A. Factual Background

     This case arises out of a dispute over an alleged
contract.  Plaintiff, iCore Networks Inc. (iCore), is a
technology company that provides voice communication services.
(Mem. [Dkt. 13] at 2.)  Defendant, Alliance, Inc. (Alliance), is
a non-profit agency that provides health services and allegedly
entered into a contract with Plaintiff for telecommunications
services.  (*Id.*)

In 2011, representatives from iCore visited Alliance's offices to market iCore's telecommunications services. (Aff. Marc T. Fratus [Dkt. 13-1] ¶ 2.) Over a period of months, Marc Fratus, Alliance's Director of Technology, met with representatives from communications providers, including Anthony Chapa of iCore, to discuss Alliance's telecommunications needs. (*Id.* ¶¶ 3-4.) On October 28, 2011, Mr. Fratus signed an iCore document entitled "Customer Service Order Agreement" (CSO or Agreement). (CSO [Dkt. 13-2] at 1; Aff. Fratus ¶ 6.) The Agreement provides Alliance's name, address, and phone number in the section titled "Billing Information." (CSO at 1.) Mr. Fratus signed in a box that contained the title "Customer Acceptance and Service Authorization." (*Id.*)

The Agreement states that the term commitment is 36 months and it provides prices for "hosted VoIP" services, "value added services," and "connectivity." (*Id.*) The Agreement is tailored to Alliance, as it sets forth fees for service at Alliance's offices in Dundalk, Belcamp, Rosedale, Baltimore, and Bel Air. (*Id.*) It also states:

> This Customer Service Order Agreement ('Service Order') constitutes the agreement between iCore Networks, Inc. ('ICore') and the company listed above (the 'Customer') for the provision of services ('Services') ordered by Customer as specified above. ICore's Universal Terms and Conditions of Service ('Universal Terms') are part of and incorporated into this Service Order and set out at www.icore.com. When Customer signs

> this Service Order, Customer agrees and
> acknowledges that it has read the Universal
> Terms at www.icore.com as well as the E911
> disclosure, also at www.icore.com, and
> agrees to be bound by said documents.  In
> the event of any conflict between the
> Universal Terms and this Order Form, the
> Universal Terms shall prevail.

(*Id.*)

The document titled "ICore Networks, Inc. Universal Terms and Conditions of Service" (Universal Terms Document) includes a section titled "Term and Termination."  (Universal Terms [Dkt. 13-3] at 3.)  There is a provision entitled "Early Termination" that states as follows:

> If this Agreement is terminated by Customer
> prior to the expiration of the Initial Term
> or any Renewal Term and such termination is
> not due to iCore's breach . . . or if ICore
> terminates this Agreement . . . due to
> Customer's breach, Customer shall pay to
> ICore an early termination charge, which
> Customer agrees is reasonable, equal to all
> non-recurring and monthly recurring charges
> set forth in the Customer Service Order
> Agreement which would otherwise be due
> through the end of the Initial Term or
> Renewal Term in effect at the time,
> including all applicable taxes and fees.
> The parties agree that the precise damages
> resulting from an early termination by
> Customer or termination by ICore due to
> Customer's breach are difficult to ascertain
> and the early termination charge . . . is a
> reasonable estimate of anticipated actual
> damages and not a penalty.  The early
> termination charge shall be due and payable
> within ten (10) days of the effective date
> of termination.

(*Id.*)  Mr. Fratus submits that he understood that the CSO was
not binding, that Alliance was still free to select any service
provider, and that his signature was only required for the
purpose of holding the lower price quote.  (Aff. Fratus ¶ 6.)
ICore thinks otherwise.

The parties dispute whether iCore contacted Alliance
to begin the installation process.  (Opp. [Dkt. 18] at 8.)  On
March 7, 2012, Mr. Fratus informed iCore that Alliance had
decided to use a different service provider and that it did not
need the services of iCore.  (Aff. Fratus ¶ 10.)  Mr. Chapa then
informed the president of Alliance that he believed Mr. Fratus
had executed a binding contract by signing the Customer
Agreement on October 28, 2011.  (*Id.*)  On March 16, 2012, Tanya
Ownens of iCore sent Alliance a letter, referencing the
Universal Terms and demanding payment.  [Dkt. 13-5.]  The
parties were unable to come to an agreement and on April 27,
2012, iCore commenced this suit by filing a Complaint in the
Circuit Court of Fairfax County, Virginia.  [Dkt. 1-4.]  ICore
seeks damages for breach of contract in the amount of
$278,789.00 plus interest, late fees, costs, and attorneys' fees
pursuant to the terms of the Agreement.  (Compl. ¶¶ 12-14.)

B. Procedural Background

This case was properly removed from the Circuit Court
of Fairfax County, Virginia to this Court on May 16, 2012.

[Dkt. 1.]  Defendant filed an Answer to the Complaint on May 22, 2012.  [Dkt. 9.]  On June 15, 2012, Defendant filed a Motion for Summary Judgment.  [Dkt. 12.]  On June 29, 2012, Plaintiff filed an Opposition to the motion.  [Dkt. 18.]   On July 5, 2012, Defendant filed a Reply.  [Dkt. 20.]  On July 20, 2012, this Court held a hearing on the Motion.

Defendant's Motion is now before this Court.

## II.  Standard of Review

Summary judgment is appropriate only if the record shows that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996) (citations omitted).  The party seeking summary judgment has the initial burden of showing the absence of a material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson*, 477 U.S. at 248.

Once a motion for summary judgment is properly made and supported, the opposing party must come forward and show that a genuine dispute exists.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  The party opposing summary judgment may not rest upon mere

allegations or denials.  Rather, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 250 (quotation omitted).

Unsupported speculation is not enough to withstand a motion for summary judgment.  *See Ash v. United Parcel Serv., Inc.*, 800 F.2d 409, 411-12 (4th Cir. 1986).  Summary judgment is appropriate when, after discovery, a party has failed to make a "showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322. In reviewing the record on summary judgment, the court "must draw any inferences in the light most favorable to the non-movant" and "determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant." *Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1259 (4th Cir. 1991) (citations omitted).

### III.  Analysis

Alliance is not entitled to summary judgment. Plaintiff, iCore, claims a breach of contract.  A federal court sitting in diversity jurisdiction must apply the choice of law rules of the forum state, *Colgan Air, Inc. v. Raytheon Aircraft Co.,* 507 F.3d 270. 275 (4th Cir. 2007), and "[t]he law of Virginia favors contractual choice of law provisions, giving them full effect except in unusual circumstances," *Ettinger v.*

*Milvets Sys. Tech., Inc.*, 38 F. App'x 962, 965 (4th Cir. 2002)
(citing *Tate v. Hain*, 25 S.E.2d 321, 324 (Va. 1943)).  The
disputed contract here specifies it should be "governed by and
enforced according to the laws of the Commonwealth of Virginia."
(Universal Terms at 6.)  Thus, to establish a breach of
contract, Plaintiff iCore must establish "(1) a legally
enforceable obligation of [Alliance] to [iCore]; (2)
[Alliance's] violation or breach of that obligation; and (3)
injury or damage to [iCore] caused by the breach of obligation."
*Filak v. George*, 594 S.E.2d 610, 619 (Va. 2004) (reciting the
elements of a breach of contract claim under Virginia law).
Considering the evidentiary record "in the light most favorable
to" iCore, *Brock*, 933 F.2d at 1259, the Court concludes that "a
reasonable trier of fact [could] find for" iCore, *id.*, as to
each element of its claim.

　　　　For the purpose of its summary judgment motion,
Alliance makes only one argument: that any agreement it had with
iCore was subject to a condition precedent that was never met.
(Mem. [Dkt. 13] at 8.)  Since "the initial burden" is on the
party moving for summary judgment, *Celotex*, 477 U.S. at 325, the
Court will limit discussion to that contention -- a contention
the Court ultimately finds unpersuasive.  It is true as Alliance
points out that, "[w]hen a contact provides for the performance
of special conditions precedent before a party is entitled to

7

payment, the conditions must be performed unless the other party prevents or waives their performance." *Winn v. Aleda Constr. Co.,* 315 S.E.2d 193, 195 (Va. 1984).  But the provision that, according to Alliance, creates the condition precedent cannot bear the weight that Alliance would have it bear.

Alliance argues that the Early Termination provision contains a condition precedent because it states, "[i]f this Agreement is terminated by Customer prior to the expiration of the Initial Term . . . ."  Alliance points out that according to the Universal Terms Document, the Initial Term "shall begin on the Service Activation Date," which is the date when the communications services were made available to Alliance.  (Mem. at 9.)  Thus, Alliance submits that the commencement of the Initial Term is a condition precedent to Alliance's obligation to pay.  (*Id.* at 10.)  And, since iCore never commenced service, Alliance does not have an obligation to pay.

The Early Termination provision is unambiguously a liquidated damages provision that does not contain a condition precedent to the performance of the contract.  "The question whether the language of a contract is ambiguous is a question of law . . . ."  *Eure v. Norfolk Shipbuilding & Drydock Corp., Inc.,* 561 S.E.2d 663, 667 (Va. 2002).  In considering "the words at issue within the four corners of the [Universal Terms Document] itself," *id.* at 668, the Early Termination provision

8

is a liquidated damages provision.  Such a provision exists when "parties to a contract [] agree in advance about the amount to be paid as compensation for loss or injury which may result from a breach of the contract '[w]hen the actual damages contemplated at the time of the agreement are uncertain and difficult to determine with exactness and when the amount fixed is not out of all proportion to the probable loss.'"  *Boots, Inc. v. Singh*, 649 S.E.2d 695, 697 (Va. 2007) (quoting *O'Brian v. Langley School*, 507 S.E.2d 363, 365 (Va. 1998)).

The Early Termination provision's statement that "[i]f this Agreement is terminated by Customer prior to the expiration of the Initial Term," simply provides that if Alliance breaches the contract prior to the expiration of the Initial Term -- the term of service in the Customer Service Order Agreement, here 36 months -- Alliance shall pay an early termination charge. (Universal Terms at 3.)  Alliance would pay that charge because the parties agreed in advance that damages are uncertain and difficult to determine.  The Court finds that such language unambiguously establishes a liquidated damages clause.

"Contract language is ambiguous when 'it may be understood in more than one way or when it refers to two or more things at the same time.'"  *Eure*, 561 S.E.2d at 668 (quoting *Granite State Ins. Co. v. Bottoms*, 415 S.E.2d 131, 134 (Va. 1992).  Although one might construe the Early Termination

9

provision to provide that commencement of service is necessary in order for the the early termination liquidated damages clause to have effect, nothing in the plain meaning of the language of the provision or the Universal Terms Document suggests that commencement of service is a condition precedent for the agreement itself.  If the commencement of service was actually a condition precedent to the agreement, as Alliance submits, it would make the entire contract an illusory promise.  It would be such that Alliance had no obligation to pay iCore unless it decided to pay iCore.  Or that Alliance had no obligation to use iCore's services unless it decided to use iCore's services.  If the condition precedent is within the control of one of the parties, then it renders any agreement illusory.

Here, the statement "[i]f this Agreement is terminated by Customer prior to the expiration of the Initial Term," describes the circumstances under which Alliance might owe liquidated damages, not the circumstances under which performance is excused.  That is unambiguous.  And, "[w]hen an agreement is plain and unambiguous on its face, the Court will not look for meaning beyond the instrument itself." *Eure,* 561 S.E.2d at 667.  As a result, the Court will not consider parol evidence in order to determine the intent of the parties.

To succeed on its claim, iCore will have to prove a legally enforceable obligation.  Evidence in the record is

sufficient to support the conclusion that Alliance entered a contract to purchase 36 months' worth of telecommunications services from iCore on October 28, 2011, when Mr. Fratus, Alliance's Director of Technology, signed a "Customer Service Order Agreement." And, Alliance's argument that commencement of service is a condition precedent to the agreement fails for the reasons discussed above. As a result, the Court finds Alliance has not shown that there is no genuine issue for trial.

### IV.   Conclusion

For the reasons stated above, the Court will deny Defendant's Motion for Summary Judgment.

An appropriate Order will issue.


_____/s/_____

July 26, 2012                              James C. Cacheris
Alexandria, Virginia        UNITED STATES DISTRICT COURT JUDGE